| | |
|---|---|
| **Wil Morris, Esquire** | **Ralph Francois, Esquire** |
| **MORRIS LEGAL, LLC** | **FRANCOIS & ASSOCIATES, PC** |
| **2800 Biscayne Boulevard, Suite 530** | **4800 Hollywood Boulevard** |
| **Miami, Florida 33137** | **Suite 450** |
| **Email: wilm@morrislegalfla.com** | **Hollywood, Florida** |
| **Telephone:  305-444-3437** | **Telephone:** |
| **Facsimile: 305-444-3457** | **Email: Lawyerfrancois@gmail.com** |
| *Attorneys for Plaintiffs – Lead Counsel* | *Attorneys for Plaintiffs* |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA – MIAMI DIVISION**

_____x

| | | |
|---|---|---|
| LORFILS JOSEPH | : | |
| STEPHANIA NOEL | : | CASENO.:_____ |
| MARIE LYNDA LAURORE | : | |
| WILMAC LAURORE | : | |
| DIEUDONNE LOUIS JEUNE | : | JUDGE: _____ |
| MARIE YVES MEHN | : | |
| BOILEAU MEHN | : | |
| NADAB ETIZARD | : | |
| PHONISE ETIZARD; AND | : | |
| ELLESHIA NEWKIRK | : | |
| (On behalf of themselves and all other | : | |
| Investors of Eminifx similarly situated.) | : | |
| | : | |
| | : | |
| PLAINTIFFS | : | |
| | : | CLASS ACTION COMPLAINT FOR |
| | : | FRAUD, RACKETEERING, CIVIL |
| -AGAINST- | : | CONSPIRACY TO COMMIT FRAUD, AND |
| | : | MONEY DAMAGES |
| GENERAL CONFERENCE CORPORATION | : | |
| OF 7TH DAY ADVENTIST aka (CGC) | : | |
| EDDY ALEXANDRE | : | |
| EMINIFX INC. | : | |
| THEODORE NORMAN CLAIR aka | : | |
| "TED N.C. " WILSON (in his | : | |
| Personal capacity as President of GCC) | : | |
| JOHN E. MAISONNEUVE | : | |
| PHILIPS MONTPREMIER | : | |
| WILLIAMS JEAN CHARLES | : | |
| SOPHIA MAISONNEUVE | : | |
| LYDIE BASTIEN | : | |
| BERTRAND LOUIS | : | |
| AUGUSTIN FAUSTIN | : | |
| REV. SMITH OLIVIER | : | |
| JOHN EDVARD | : | |
| PROF. GEOFFREY | : | |
| ABDONEL JEAN PHILLIPE | : | |
| ABRAHAM SAINT CROIX | : | |
| ANDY LAGREDELLE | : | |

1

CALERBE AGUY                                    :
CARL BEHRMANN                                   :
CARLYNS BEHRMANN                                :
CRIS CAZARINE-DUTRA                             :
DANTE RICHARDSON                                :
DARNEL MARIUS                                   :
EDNER ELOI                                      :
EMILE DUVIVIER                                  :
ESTEB PIERRE                                    :
FRED SAINT-FLEUR                                :
FREDO IGNACE                                    :
JACKY GEORGES                                   :
JEAN FENELON                                    :
JEAN PARISIEN                                   :
JEAN-CLAUDE LOUIS JEUNE                         :
JOCELIN BELIZAIRE                               :
JOSEPH DORIVAL                                  :
J-ROBERT JEAN-BAPTISTE                          :
LEE MAYJORS MEZIL                               :
LERISNEL SAINT FLEUR                            :
MEDGINE BONZIL                                  :
MOISE BERTRESSE                                 :
PEGGY FILOSSAINT                                :
PHILIPS MOMPREMIER                              :
SAMUEL JEROME                                   :
SIDNEY CHAMPAGNE                                :
VIRGO BELIZAIRE                                 :
YVENIEL SAINT LUC                               :
UNITED STATES OF AMERICA                        :
AGAPE HAITIAN SDA CHURCH.                       :
AGAPE HAITIAN SDA CHURCH                        :
   (HUNTSVILLE)                                 :
APOPKA FRANCO HAITIAN 7TH-DAY                   :
   ADVENTIST COMPANY                            :
BERACA HAITIAN                                  :
BERACAH FIRST HAITIAN SEVENTH-DAY               :
   ADVENTIST CHURCH                             :
BETH-UNION HAITIAN SEVENTH-DAY                  :
   ADVENTIST CHURCH                             :
BETHANY HAITIAN ADVENTIST COMPANY              :
BETHANY EGLISE HAITENNE DES                     :
   ADVENTISTES                                  :
BETHEL HAITIAN SEVENTH-DAY                      :
   ADVENTIST CHURCH                             :
BETHESDA HAITIAN SEVENTH-DAY                    :
   ADVENTIST CHURCH                             :
BETHLEHEM FRENCH ADVENTIST                      :
CHURCH                                          :
BETHSAIDA HAITIAN CHURCH                        :
BRONX FRANCO-HAITIAN FR. SEVENTH-              :
   DAYADVENTIST COMPANY                         :
EBENEZER HAITIAN CHURCH (SEAFORD)              :
EBENEZER HAITIAN SEVENTH-DAY                    :
   ADVENTIST CHURCH                             :

| | |
|---|---|
| **EBENEZER TEMPLE SEVENTH-DAY** | : |
| **ADVENTIST FR-HAITIAN CHURCH** | : |
| **ELIM FRENCH HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST CHURCH** | : |
| **EPHESUS HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST CHURCH** | : |
| **FIRST HAITIAN AMERICAN SEVENTH-DAY** | : |
| **ADVENTIST CHURCH** | : |
| **FRAMINGHAM TEMPLE HAITIAN** | : |
| **SEVENTH-DAY ADVENTIST CHURCH** | : |
| **GETHSEMANE HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST CHURCH** | : |
| **GOSEN HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST COMPANY** | : |
| **HOREB HAITIAN ADVENTIST CHURCH** | : |
| **HOREB HAITIAN ADVENTIST CHURCH** | : |
| **(LOUISVILLE)** | : |
| **HOUSTON HAITIAN BETHANY SEVENTH-** | : |
| **DAYADVENTIST CHURCH** | : |
| **JERUSALEM HAITIAN (HAINES CITY)** | : |
| **JERUSALEM HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST CHURCH** | : |
| **LAKE CHARLES HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST GROUP** | : |
| **LEBANON HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST MISSION GROUP** | : |
| **MARANATHA HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST CHURCH** | : |
| **MCALLEN HAITIAN EBENEZER SEVENTH-** | : |
| **DAY ADVENTIST CHURCH** | : |
| **MIAMI HAITIAN (MISSION GROUP)** | : |
| **MITSPA HAITIAN ADVENTIST COMPANY** | : |
| **MORIJA HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST (MARGATE)** | : |
| **MORIJA HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST** | : |
| **MOUNT OLIVE HAITIAN COMPANY** | : |
| **MOUNT POCONO HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST CHURCH** | : |
| **NEW MARANATHA HAITIAN ADVENTIST** | : |
| **CHURCH** | : |
| **NOUVELLE ARCHE HAITIAN** | : |
| **SEVENTH-DAY ADVENTIST CHURCH** | : |
| **NOVATO HOREB HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST COMPANY** | : |
| **OCALA HAITIAN SEVENTH-DAY** | : |
| **ADVENTIST COMPANY** | : |
| **PALM COAST HAITIAN (MISSION GROUP)** | : |
| **PENIEL HAITIAN 7TH-DAY** | : |
| **ADVENTIST CHURCH** | : |
| **PREGAME HAITIAN** | : |
| **SEVENTH-DAY ADVENTIST** | : |
| **(KISSIMMEE)** | : |
| **RALEIGH-BETHEL HAITIAN SEVENTH-** | : |

DAY AVENTIST COMPANY                          :
SHEKINAH HAITIAN SEVENTH-DAY                  :
  ADVENTIST CHURCH                          :
SHEKINAH HAITIAN SEVENTH-DAY                  :
  ADVENTIST CHURCH                          :
SINAI HAITIAN SEVENTH-DAY ADVENTIST :
  CHURCH                                    :
SMYRNE HAITIAN SEVENTH-DAY                    :
  ADVENTIST CHURCH                          :
SPRINGFIELD NOUVELLE JEREUSALEM      :
  HAITIAN SDA COMPANY                       :
TAMPA HAITIAN SEVENTH-DAY                     :
  ADVENTIST COMPANY                         :
TEXAS ADVENTIST CONFERENCE                    :
NEW YORK CONFERENCE                           :
JANE DOE 1(Being the wife of Eddy            :
Alexandre and Chief Financial Officer Of     :
Eminifx.)                                     :
                                              :
        DEFENDANTS                 :
_____x

## CLASS ACTION COMPLAINT

Plaintiffs, by their attorneys, THE LAW OFFICES OF WIL MORRIS, PC with offices at 2800 Biscayne Boulevard, Suite 530, Miami, Florida 33137, the LAW OFFICES OF FRANCOIS & ASSOCIATES, P.C. with offices at 4000 Hollywood Boulevard, Suite 554, Hollywood, Florida 33023, complaining of the Defendants, and allege as follows:

## PRELIMINARY STATEMENT

1.      This is a class action lawsuit alleging fraud, civil conspiracy to commit fraud, civil violations of the Federal Racketeer and Corrupt Organizations Act (18 U.S.C, section 1964 (c) ("Federal RICO") and civil violations of the Florida Racketeer Influenced and Corrupt Organizations Act (Fla. 895), Fraud, Negligent hiring and supervision, Intentional infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Securities Fraud, Material Misrepresentation, Misappropriation of Funds, theft, embezzlement, against Defendants EDDY ALEXANDRE, ("ALEXANDRE"), EMINIFIX, INC ("EMINIFX"), JOHN E.

MAISONNEUVE, ("MAISONNEUVE"), PHILIPS MONTPREMIER ("MONTPREMIER"), WILLIAMS JEAN CHARLES ("JEAN CHARLES") THEODORE NORMAN CLAIR ("CLAIR"), GENERAL CONFERENCE CORPORATION OF 7TH DAY ADVENSITS, LYDIE BASTIEN, SOPHIA MAISSONEUVE,  BERTRAND LOUIS, PROF GEORFREY, ABDONEL JEAN PHILLIPE, ABRAHAM SAINT CROIX, ANDY LAGREDELLE, CALERBE AGUY, CARL BEHRMANN, CARLYNS BEHRMANN, CRIS CAZARINE-DUTRA, DANTE RICHARDSON, DARNEL MARIUS, EDNER ELOI, EMILE DUVIVIER, ESTEB PIERRE, FRED SAINT-FLEUR, FREDO IGNACE, JACKY GEORGES, JEAN FENELON, JEAN PARISIEN, JEAN-CLAUDE LOUIS JEUNE, JOCELIN BELIZAIRE, JOSEPH DORIVAL, J-ROBERT JEAN-BAPTISTE, LEE MAYJORS MEZIL, LERISNEL SAINT FLEUR, MEDGINE BONZIL, MOISE BERTRESSE, PEGGY FILOSSAINT, PHILIPS MOMPREMIER, SAMUEL JEROME, SIDNEY CHAMPAGNE, VIRGO BELIZAIRE, YVENIEL SAINT LUC, AGAPE HAITIAN SDA CHURCH, AGAPE HAITIAN SDA CHURCH (HUNTSVILLE), APOPKA FRANCO HAITIAN SEVENTH-DAY ADVENTIST COMPANY, BERACA HAITIAN, BERACAH FIRST HAITIAN SEVENTH-DAY ADVENTIST CHURCH, BETH-UNION HAITIAN SEVENTH-DAY ADVENTIST CHURCH, BETHANY HAITIAN ADVENTIST COMPANY, BETHANY EGLISE HAITENNE DES ADVENTISTES, BETHEL HAITIAN SEVENTH-DAY ADVENTIST CHURCH, BETHLEHEM SEVENTHG DAY ADVENTIST CHURCH, BETHESDA HAITIAN SEVENTH-DAY ADVENTIST CHURCH, BETHSAIDA HAITIAN CHURCH, BRONX FRANCO-HAITIAN FR. SEVENTH-DAY ADVENTIST COMPANY, EBENEZER HAITIAN CHURCH (SEAFORD), EBENEZER HAITIAN SEVENTH-DAY ADVENTIST CHURCH, EBENEZER TEMPLE SEVENTH-DAY ADVENTIST FR-

HAITIAN CHURCH, ELIM FRENCH HAITIAN SEVENTH-DAY ADVENTIST CHURCH, EPHESUS HAITIAN SEVENTH-DAY ADVENTIST CHURCH, FIRST HAITIAN AMERICAN SEVENTH-DAY ADVENTIST CHURCH, FRAMINGHAM TEMPLE HAITIAN SEVENTH-DAY ADVENTIST CHURCH, GETHSEMANE HAITIAN SEVENTH-DAY ADVENTIST CHURCH, GOSEN HAITIAN SEVENTH-DAY ADVENTIST COMPANY, HOREB HAITIAN ADVENTIST CHURCH , HOREB HAITIAN ADVENTIST CHURCH (LOUISVILLE), HOUSTON HAITIAN BETHANY SEVENTH-DAY ADVENTIST CHURCH, JERUSALEM HAITIAN (HAINES CITY), JERUSALEM HAITIAN SEVENTH-DAY ADVENTIST CHURCH, LAKE CHARLES HAITIAN SEVENTH-DAY ADVENTIST GROUP, LEBANON HAITIAN SEVENTH-DAY ADVENTIST MISSION GROUP, MARANTHA HAITIAN SEVENTH-DAY ADVENTIST CHURCH, MCALLEN HAITIAN EBENEZER SEVENTH-DAY ADVENTIST CHURCH, MIAMI HAITIAN (MISSION GROUP), MITSPA HAITIAN ADVENTIST COMPANY, MORIJA HAITIAN SEVENTH-DAY ADVENTIST (MARGATE), MORIJA HAITIAN SEVENTH-DAY ADVENTIST , MOUNT OLIVE HAITIAN COMPANY, MOUNT POCONO HAITIAN SEVENTH-DAY ADVENTIST CHURCH, NEW MARANATHA HAITIAN ADVENTIST CHURCH, NOUVELLE ARCHE HAITIAN SEVENTH-DAY ADVENTIST CHURCH, NOVATO HOREB HAITIAN SEVENTH-DAY ADVENTIST COMPANY, OCALA HAITIAN SEVENTH-DAY ADVENTIST COMPANY, PALM COAST HAITIAN (MISSION GROUP), PENIEL HAITIAN SEVENTH-DAY ADVENTIST CHURCH, PREGAME HAITIAN SEVENTH-DAY ADVENTIST (KISSIMMEE), RALEIGH-BETHEL HAITIAN SEVENTH-DAY AVENTIST COMPANY, SHEKINAH HAITIAN SEVENTH-DAY ADVENTIST CHURCH, SHEKINAH HAITIAN SEVENTH-

DAY ADVENTIST CHURCH, SINAI HAITIAN SEVENTH-DAY ADVENTIST CHURCH, SMYRNE HAITIAN SEVENTH-DAY ADVENTIST CHURCH, SPRINGFIELD NOUVELLE JEREUSALEM HAITIAN SDA COMPANY, TAMPA HAITIAN SEVENTH-DAY ADVENTIST COMPANY, FLORIDA ADVENTIST CONFERENCE, NEW YORK ADVENTIST CONFERENCE, MASSACHUSSETS ADVENTIST CONFERENCE, TEXAS ADVENSTIST CONFERENCE, JANE DOE 1 collectively the "Defendants".

## **NATURE OF CASE**

2.      This is class action lawsuit brought against the above Defendants, for Fraud, Securities Fraud, Racketeering, Civil conspiracy to commit Fraud and common fraud, all arising from a Ponzi scheme developed and operated by Defendants: EDDY ALEXANDRE, JOHN MAISONNEUVE, PHILIPS MONTPREMIER, WILLIAMS JEAN CHARLES, SOPHIA MAISSONNEUVE, LYDIE BASTIEN, BESTRAND LOUIS, PROF GEOFFREY, THEODORE NORMAN CLAIR,  ABDONEL JEAN PHILLIPE, ABRAHAM SAINT CROIX, ANDY LAGREDELLE, CALERBE AGUY, CARL BEHRMANN, CARLYNS BEHRMANN, CRIS CAZARINE-DUTRA, DANTE RICHARDSON, DARNEL MARIUS, EDNER ELOI, EMILE DUVIVIER, ESTEB PIERRE, FRED SAINT-FLEUR, FREDO IGNACE, JACKY GEORGES, JEAN FENELON, JEAN PARISIEN, JEAN-CLAUDE LOUIS JEUNE, JOCELIN BELIZAIRE, JOSEPH DORIVAL, J-ROBERT JEAN-BAPTISTE, LEE MAYJORS MEZIL, LERISNEL SAINT FLEUR, MEDGINE BONZIL, MOISE BERTRESSE, PEGGY FILOSSAINT, PHILIPS MOMPREMIER, PHILIPS MOMPREMIER, SAMUEL JEROME, SIDNEY CHAMPAGNE, VIRGO BELIZAIRE, YVENIEL SAINT LUC, the GENERAL CONFERENCE CORPORATION OF THE 7TH DAY ADVENTIST CHURCH, AGAPE HAITIAN SDA CHURCH, AGAPE HAITIAN SDA CHURCH

(HUNTSVILLE), APOPKA FRANCO HAITIAN SEVENTH-DAY ADVENTIST COMPANY, BERACA HAITIAN, BERACAH FIRST HAITIAN SEVENTH-DAY ADVENTIST CHURCH, BETH-UNION HAITIAN SEVENTH-DAY ADVENTIST CHURCH, BETHANY HAITIAN ADVENTIST COMPANY, BETHANY EGLISE HAITENNE DES ADVENTISTES, BETHEL HAITIAN SEVENTH-DAY ADVENTIST CHURCH, BETHESDA HAITIAN SEVENTH-DAY ADVENTIST CHURCH, BETHSAIDA HAITIAN CHURCH, BRONX FRANCO-HAITIAN FR. SEVENTH-DAY ADVENTIST COMPANY, EBENEZER HAITIAN CHURCH (SEAFORD), EBENEZER HAITIAN SEVENTH-DAY ADVENTIST CHURCH, EBENEZER TEMPLE SEVENTH-DAY ADVENTIST FR-HAITIAN CHURCH, ELIM FRENCH HAITIAN SEVENTH-DAY ADVENTIST CHURCH, EPHESUS HAITIAN SEVENTH-DAY ADVENTIST CHURCH, FIRST HAITIAN AMERICAN SEVENTH-DAY ADVENTIST CHURCH, FRAMINGHAM TEMPLE HAITIAN SEVENTH-DAY ADVENTIST CHURCH, GETHSEMANE HAITIAN SEVENTH-DAY ADVENTIST CHURCH, GOSEN HAITIAN SEVENTH-DAY ADVENTIST COMPANY, HOREB HAITIAN ADVENTIST CHURCH , HOREB HAITIAN ADVENTIST CHURCH (LOUISVILLE), HOUSTON HAITIAN BETHANY SEVENTH-DAY ADVENTIST CHURCH, JERUSALEM HAITIAN (HAINES CITY), JERUSALEM HAITIAN SEVENTH-DAY ADVENTIST CHURCH, LAKE CHARLES HAITIAN SEVENTH-DAY ADVENTIST GROUP, LEBANON HAITIAN SEVENTH-DAY ADVENTIST MISSION GROUP, MARANTHA HAITIAN SEVENTH-DAY ADVENTIST CHURCH, MCALLEN HAITIAN EBENEZER SEVENTH-DAY ADVENTIST CHURCH, MIAMI HAITIAN (MISSION GROUP), MITSPA HAITIAN ADVENTIST COMPANY, MORIJA HAITIAN SEVENTH-DAY ADVENTIST (MARGATE), MORIJA HAITIAN

SEVENTH-DAY ADVENTIST , MOUNT OLIVE HAITIAN COMPANY, MOUNT POCONO HAITIAN SEVENTH-DAY ADVENTIST CHURCH, NEW MARANATHA HAITIAN ADVENTIST CHURCH, NOUVELLE ARCHE HAITIAN SEVENTH-DAY ADVENTIST CHURCH, NOVATO HOREB HAITIAN SEVENTH-DAY ADVENTIST COMPANY, OCALA HAITIAN SEVENTH-DAY ADVENTIST COMPANY, PALM COAST HAITIAN (MISSION GROUP), PENIEL HAITIAN SEVENTH-DAY ADVENTIST CHURCH, PREGAME HAITIAN SEVENTH-DAY ADVENTIST (KISSIMMEE), RALEIGH-BETHEL HAITIAN SEVENTH-DAY AVENTIST COMPANY, SHEKINAH HAITIAN SEVENTH-DAY ADVENTIST CHURCH, SHEKINAH HAITIAN SEVENTH-DAY ADVENTIST CHURCH, SINAI HAITIAN SEVENTH-DAY ADVENTIST CHURCH, SMYRNE HAITIAN SEVENTH-DAY ADVENTIST CHURCH, SPRINGFIELD NOUVELLE JEREUSALEM HAITIAN SDA COMPANY, and the TAMPA HAITIAN SEVENTH-DAY ADVENTIST COMPANY to defraud the Plaintiffs. These Defendants used their positions as pastors and religious leaders of the 7th Day Adventist Church to illegally and wrongfully lured their parishioners to invest in a Ponzi scheme using EMINIFX, (the "Criminal enterprise") a company duly licensed in the State of New York as the corrupt vehicle for the Fraud. These Defendants made millions of dollars, while over 62,000 investors have lost over three hundred million dollars. The conspiracy and the fraud were made possible with the express or tacit knowledge of the GENERAL CONFERENCE CORPORATION OF THE 7TH DAY ADVENTIST CHURCH, a defendant herein.

3.       On May 22, 2022, Defendant EDDY ALEXANDRE was arrested by the Federal Bureau of Investigation (FBI) in the Southern District of New York and pled guilty to Commodities Fraud on February 12, 2023. As a result of the plea, Defendant ALEXANDRE,

forfeited to the United States Government $248 million dollars, money that belongs to the member of the Class.

4.      The EMINIFX Ponzi Scheme started in 2020 with the following Defendants (ALEXANDRE, MAISONNEUVE, JEAN CHARLES, and MONTPREMIER) agreed to work together to get as many of their parishioners to invest in the EMINIFX Ponzi Scheme.

5.      Defendant EDDY ALEXANDRE, as Chief Executive Officer of EMINIFX launched a website to wit (Eminifx.com) and told members of the class that he had developed a special Robot assist trade secret that allows EMINIFX to conduct trading in Crypto Currency, and that investors will never lose any of their money. He promised the members of the class a return of Five percent each week, about 242% return a year.  In reality, ALEXANDRE, did not invest any of the money he collected, but used prior investors' money to pay later investors, hence the Ponzi Scheme.

6.      The Defendants acting together and in concert, and on behalf of each other, developed a pyramid scheme where each one of them was responsible for recruiting investors, and for each investor they recruited, they received a 10% compensation of the money invested. Each recruited investor was asked to recruit three other investors.

7.      Between January 2020 and May 2022 the Defendants collected over three hundred million dollars from 62,000 people in seven countries including the (United States, Canada, France, Haiti, Dominican Republic, Chile and Brazil) under false pretense.

8.      Defendants (ALEXANDRE, MAISONNEUVE, MONTPREMIER and JEAN CHARLES are pastors of the 7th day Adventist church in Pennsylvania, Florida, New York. And Texas respectively. The Defendants used their positions as religious leaders to convince

their parishioners to invest in EMINIFX with the intent to defraud the investors causing millions of dollars in damages.

9.      The United States of America is named as a necessary party to this litigation because Defendant EDDY ALEXANDRE, in a plea agreement forfeited to the United States Government $248 million dollars, money that belongs to members of the class. To the extent that Judge Canan of the Southern District of New York issued a Preliminary Order of forfeiture providing for claimants to make individual claims, the majority of members of the class will be unable to do so. Consequently, any money left over at the conclusion of the remission period must be turn over to the class so that people who did not receive their money during the remission period can do so via this litigation. (A copy of the Preliminary Order of Forfeiture is attached as Exhibit ("A").

## JURISDICTION AND VENUE

10.     This Court has original subject-matter jurisdiction over this action pursuant to 18 U.S.C. §§ 1964 (c), and 28 U.S.C § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

11.     This court has also subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is complete diversity of citizenship between the Plaintiff and the Defendants.

12.     This court has jurisdiction over the Plaintiffs' related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Defendant EDDY ALEXANDRE AND EMINIFX because both Defendants have purposefully directed their fraudulent actions at this

forum to obtain benefits from thousands of investors who reside in the state of Florida, and specifically in this forum. The exercise of jurisdiction over ALEXANDRE and EMINIFX is reasonable at least because ALEXANDRE and EMINIFX conspired with Defendants MONTPREMIER and JEAN CHARLES to defraud thousands of investors who reside in this forum. Specifically, ALEXANDRE, visited Florida and was received by Defendants MONTPREMIER and JEAN CHARLES, and both Defendants allowed ALEXANDRE to address their parishioners about EMINIFX and the fraudulent Ponzi scheme. The defendants worked together and intentionally participated in the fraudulent Enterprise.

14.     This Court further has personal jurisdiction over ALEXANDRE under 28 U.S.C. § 1965 (b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court that Court may cause parties residing in another district to be summoned to that District if the "ends of justice require" it. Given these facts and that no other has personal jurisdiction over all defendants, the ends of justice require this Court's exercise of personal jurisdiction over ALEXANDRE and EMINIFX.

15.     This Court has personal Jurisdiction over Defendant MAISONNEUVE because this Defendant purposefully directed his conduct at this forum with respect to the Ponzi scheme. The exercise of jurisdiction over MAISONNEUVE is reasonable at least because the conspired with Defendants JEAN CHARLES, ALEXANDRE AND MONTPREMIER with the objective of enriching themselves at the expense of members of the class who reside in this forum.

16.     The court has personal jurisdiction over Defendant SOPHIA MAISONNEUVE, she and her husband have visited Florida several times, and have recruited hundreds of investors in Florida who are members of this class. In addition, This Defendant served as customer liaison

for Customer service in the corrupt enterprise, and as such purposefully avail herself to the jurisdiction of this Court.

17. The Court has jurisdiction over Defendant LYDIE BASTIEN who served as Vice President of EMINIFX. This Defendant has purposefully avail herself to the jurisdiction of this court by directing, operating, participating in the Ponzi scheme focusing on people residing in this district.

18. The court has personal jurisdiction over the GENERAL CONFERENCE CORPORATION of the 7th Day Adventist Church because the GCC maintains several churches in Florida, and hired the pastors who orchestrated the fraud, with the explicit or tacit consent of Defendant CGC.

19. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found and/or transacts his affairs in this District given each defendant's participation in the EMINIFX fraudulent Enterprise, as alleged above. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c)(3) or the alien-venue rule as codified.

## **THE PARTIES**

## **NAMED PLAINTIFFS**

20. This Class Action lawsuit is brought by 87 individual investors who are American citizens or permanent residents.

21.     Most of the named Plaintiffs reside in the State of Florida and specifically this federal district.

22.     Each one of the Plaintiff has invested significant amount of money in EMINIFX upon the advice and coercions of certain Defendants and three of them are Pastors appointed by the GENERAL CONFERENCE CORPORATION OF THE 7TH DAY ADVENTIST CHURCH, defendant herein.

23.     Named Plaintiffs represent the Class of Investors totaling between Sixty-Two Thousand to a Hundred Thousand.  Members of the class are in the State of Florida and several other states including several foreign countries.

24.     Named Plaintiffs are qualified to represent the class of investors of EMINIFX seeking relief from the court by holding those responsible for the economic and emotional damages to account

25.     The above-named Plaintiffs have retained competent counsels with significant in litigating class action lawsuits. The named Plaintiffs can and will adequately represent the interest of the class of investors.

## **NAMED DEFENDANTS**

26.     Defendant EDDY ALEXANDRE is 52 years old and reside in NASSAU COUNTY, New York (hereinafter "ALEXANDRE"). This Defendant is the ringleader of the fraudulent enterprise. He conceived and put in place the fraudulent machinery to defraud the class.

27.     Defendant AUGUSTIN FAUSTIN  is a resident of the State of New York, and he is an ordained minister who maintain an online Ministry affiliated with the Adventist Church.

28.     Defendant JOHN MAISONNEUVE is a resident of the State of Pennsylvania, he is the senior Pastor of the Shekinah Adventist Group, Bethlehem French Adventist Church, a part of

the Allegheny East Conference Corporation of the Seventh Day Adventists church controlled and owned by the Defendant CGC 7th Day Adventist.

29.    Defendant WILLIAM JEAN CHARLES is a resident of the State of Florida. He is the senior pastor of the Houston Haitian Bethany Seventh Day Adventist Church, a part of the Southern Conference of the 7th Day Adventist Church, controlled by defendant CGC 7th Day Adventist Church.

30.    Defendant PHILLIPS MONTPREMIER is a resident of the State of Florida. He is the senior pastor of the Elim French Haitian SDA Church in Naples, Florida, a part of the Southern Conference of the 7th Day Adventist Church controlled by the GCC-7th day Adventist Church.

31.    Defendant LYDIA BASTIEN is the sister of Defendant EDDY ALEXANDRE, and was an integral part of the corrupt enterprise, having served as Vice President of customer service. This Defendant resides in New York City.

32.    Defendant SOPHIA MAISSONNEUVE is the wife of Defendant JOHN MAISONNEUVE. She was an integral part of the corrupt system working as a customer service operator who counseled members of the class not to withdraw their money from the scheme.

33.    Defendant BERTRAND LOUIS is a resident of the State of New York, and an advisor to Defendant EDDY ALEXANDRE. He served as an instructor of the criminal enterprise and held video sessions instructing would be investors how to invest in the criminal enterprise.

34.    Defendant PROF GEOFFREY is a resident of the State of New York and all times relevant to this action was an advisor to EMINIFX and was aware of the scam.

35.    Defendant ESTEB PIERRE is a resident of the State of  Colorado.  He is the pastor of the Agape Haitian SDA Church.

36.     Defendant MEDGINE BONZIL is a resident of the State of Alabama. He is the pastor of the Agape Haitian SDA Church.

37.     Defendant FRED SAINT-FLEUR is a resident of the State of Florida. He is the pastor of the Apopka Franco Haitian Seventh-day Adventist Company, the Bethany Eglise Haitenne Des Adventistes, the Ocala Haitian Seventh-day Adventist Company, and the Palm Coast Haitian (Mission Group).

38.     Defendant ABDONEL JEAN PHILLIPE is a resident of the State of New Jersey. He is the pastor of the Beraca Haitian.

39.     Defendant DANTE RICHARDSON is a resident of the State of Florida  He is the pastor of the Beracah First Haitian Seventh-day Adventist Church.

40.     Defendant FREDO IGNACE is a resident of the State of Massachusetts. He is the pastor of the Beth-Union Haitian Seventh-Day Adventist Church, the Bethesda Haitian Seventh-day Adventist Church, and the Sinai Haitian Seventh-day Adventist Church.

41.     Defendant YVENIEL SAINT LUC is a resident of the State of Maryland. He is the pastor of the Bethany Haitian Adventist Company.

42.     Defendant CARL BEHRMANN is a resident of the State of Massachusetts. He is the pastor of the Bethel Haitian Seventh-day Adventist Church.

43.     Defendant EMILE DUVIVIER is a resident of the State of New Jersey. She is the pastor of the Bethsaida Haitian Church.

44.     Defendant ANDY LAGREDELLE is a resident of the State of New York. He is the pastor of the Bronx Franco-Haitian Fr. Seventh-day Adventist Company.

45.     Defendant JOSEPH DORIVA Lis a resident of the State of Delaware. He is the pastor of the Ebenezer Haitian Church (Seaford).

46.     Defendant VIRGO BELIZAIRE is a resident of the State of  Louisiana.  He is the pastor of the Ebenezer Temple Seventh-day Adventist Fr-Haitian Church.

47.     Defendant PHILIPS MOMPREMIER is a resident of the State of  Florida.  He is the pastor of the Elim French Haitian Seventh-day Adventist Church.

48.     Defendant  JEAN PARISIEN is a resident of the State of  Massachusetts.  He is the pastor of the Ephesus Haitian Seventh-day Adventist Church.

49.     Defendant CARLYNS BEHRMANN is a resident of the State of  Massachusetts.  He is the pastor of the Framingham Temple Haitian Seventh-day Adventist Church.

50.     Defendant CALERBE AGUY is a resident of the State of  Massachusetts.  He is the pastor of the Gethsemane Haitian Seventh-day Adventist Church.

51.     Defendant PHILIPS MOMPREMIER is a resident of the State of  Florida.  He is the pastor of the Gosen Haitian Seventh-day Adventist Company.

52.     Defendant MOISE BERTRESSE is a resident of the State of  Florida.  He is the pastor of the Jerusalem Haitian (Haines City), and the Smyrne Haitian Seventh-day Adventist Church.

53.     Defendant ABRAHAM SAINT CROIX is a resident of the State of  Rhode Island.  He is the pastor of the Jerusalem Haitian Seventh-day Adventist Church.

54.     Defendant SAMUEL JEROME is a resident of the State of  New Jersey.  He is the pastor of the Marantha Haitian Seventh-day Adventist Church.

55.     Defendant PEGGY FILOSSAINT is a resident of the State of  New Jersey.  She is the pastor of the Marantha Haitian Seventh-day Adventist Church.

56.     Defendant JEAN FENELON is a resident of the State of Delaware.  He is the pastor of the Mitspa Haitian Adventist Company.

57.     Defendant  LERISNEL SAINT FLEUR is a resident of the State of Florida.  He is the pastor of the Morija Haitian Seventh-day Adventist (Margate).

58.     Defendant  JEAN-CLAUDE LOUIS JEUNE is a resident of the State of  Florida.  He is the pastor of the Morija Haitian Seventh-day Adventist.

59.     Defendant  JACKY GEORGES is a resident of the State of  North Carolina.  She is the pastor of the Mount Olive Haitian Company.

60.     Defendant  DARNEL MARIUS is a resident of the State of  Pennsylvania.  He is the pastor of the New Maranatha Haitian Adventist Church.

61.     Defendant ABRAHAM SAINT CROIX is a resident of the State of  Massachusetts.  He is the pastor of the Nouvelle Arche Haitian Seventh-day Adventist Church.

62.     Defendant  EDNER ELOI is a resident of the State of  California.  He is the pastor of the Novato Horeb Haitian Seventh-day Adventist Company.

63.     Defendant  J-ROBERT JEAN-BAPTISTE is a resident of the State of  Massachusetts.  He is the pastor of the Peniel Haitian Seventh-day Adventist Church.

64.     Defendant JOCELIN BELIZAIRE is a resident of the State of  Florida.  He is the pastor of the Pregame Haitian Seventh-day Adventist (Kissimmee).

65.     Defendant  CRIS CAZARINE-DUTRA is a resident of the State of  North Carolina.  He is the pastor of the Raleigh-Bethel Haitian Seventh-day Adventist Company.

66.     Defendant CALERBE AGUY is a resident of the State of  Connecticut.  He is the pastor of the Shekinah Haitian Seventh-day Adventist Church.

67.     Defendant LEE MAYJORS MEZIL is a resident of the State of  Massachusetts.  He is the pastor of the Springfield Nouvelle Jerusalem Haitian SDA Company.

68.     Defendant  SIDNEY CHAMPAGNE is a resident of the State of  Florida.  He is the pastor of the Tampa Haitian Seventh-day Adventist Company.

69.     Defendant, the GENERAL CONFERENCE CORPORATION OF THE SEVENTH-DAY-ADVENTIST, is the legal entity responsible for all the Adventist churches around the world. This Defendant resides in the State of Maryland, hired, trained, and retained the following named Defendants: (PASTORS: JOHN MAISSONEUVE, WILLIAM JEAN CHARLES, AND PHILLIPS MONTPREMIER). This Defendant was aware of the criminal enterprise and did nothing to stop it.

70.     Defendant EMINFIX is a New York Corporation, duly registered in the State of New York, and the corporation was used as a vehicle to perpetuate the Fraud and the scam that the Plaintiffs as representative of the class is complaining of.

71.     The Church Defendants are numerous and situated in different states in the United States. Each of these churches are operated by a Haitian Pastor hired and trained by the Defendant the GENERAL CONFERENCE CORPORATION. These churches are part of the state conference in which they belong. Each church named herein conspired with EDDY ALEXANDRE, CATHERINE ALEXANDRE and others to defraud the investors. The pastors of these churches intentionally participated in the fraud because they were getting paid by EDDY ALEXANDRE.

## FACTUAL BACKGROUND

72.     Defendants working together, in concert and on behalf of each other  conceived, put in place a criminal enterprise to wit Eminifx, designed to defraud investors, the majority of whom were parishioners from the Defendants' Churches. The scheme started in 2020, where

Defendant EDDY ALEXANDRE, with the assistance of all named defendants conceived a fraudulent system to solicit and received money from the public under false pretense of a robot assist trading platform that did not exist.

A. **The Criminal Enterprise – EMINFIX.COM**

73.     Defendants working together and in concert launched a crypto platform that allows investors to invest their money in the criminal enterprise (Eminifx). The website made several claims, among them that the investors would receive between 5.0 to 9.8 percent weekly on their investment. The system was created as a pyramid, where those who come first and invest recruited others to invest.  For example, person A invest a sum money, person A was told by the Defendants to recruit three people who would also invest under them as a pyramid as shown below:



74.     Once these three people invested their money, Person A receives 10% of the money invested. As more people sign up and became investors under false pretense, the initial investors or head of the team made more money at the expenses of later investors. For

example, Defendants MAISSONEUVE, JEAN CHARLES, MONTPREMIER who have access to members of the class via their churches, convinced the members of the class to invest in the scam knowing that this was fraudulent.

75.     With the assistance of the named defendants and other unnamed persons, EDDY ALEXANDRE, was able to recruit and convinced 62,000 people to wire their money to his personal bank accounts in several banks (Bank of America, TD Bank) for the purpose of investment. In reality, none of the money collected or very little of it was actually invested. According to the criminal indictment in UNITED STATES OF AMERICA vs. EDDY ALEXANDRE, only 9 million dollars of the investors' money was invested, of which the Defendant loss 6 million dollars and did not tell the investors about the loss.

76.     Among the fraudulent actions, the Defendants told the class of investors that their money would be invested in crypto, **it was not**. The Defendant told the investors that they had a trade secret – robot assist investment that would assist investors in trade, **he did not**. In fact, the Defendant EDDY ALEXANDRE, misused investors' fund by placing most of the funds in his personal bank accounts, purchasing a fleet of cars, and other real property under his own name, not under the name of the investors or the company.

B. **Role Played by Each Defendant in The Criminal Enterprise**

77.     Each of the named Defendants intentionally played an integral part in the scheme, knowing that EMINIFX was a criminal enterprise designed to defraud investors. For example, Defendant, WILLIAMS JEAN CHARLES, at the time the senior Pastor of the Adventist church in Houston, Texas knew about the fraud and benefited from the fraud by recruiting

parishioners from his own church to invest, and in return received thousands of dollars in compensation from EDDY ALEXANDRE.

78.     Defendant, JOHN MAISSONEUVE, is a senior pastor of the Adventist church in Florida, and cousin of Defendant EDDY ALEXANDRE. MAISSONEUVE intentionally participated in the Fraud, serving as an advisor to his cousin, and to Eminifx. MAISSONEUVE recruited hundreds of people from his church to invest in the scam. He used his position as spiritual leaders to coerce people to invest under him and thereby made money at the expense of members of the Class.

79.     Defendant, SOPHIA MAISSONEUVE, is the wife of Pastor MAISSONEUVE, she joined the scam at its inception, serving as customer service representative. She was in direct contact with many investors, advising them about how to create accounts using Eminifx website, how to transfer money from their bank to Eminifx.

80.     Defendant LYDIA BASTIEN, is the sister of Defendant EDDY ALEXANDRE, and intentionally participated in the scam. She initially joined the scam and since 2021 had been working with her brother. As the Vice president of Eminfix, BASTIEN toured the nation, visited many Adventist churches with Defendant ALEXANDRE, coercing people, using their positions as members of the Adventist church to defraud members of the class.

81.     Defendant THEODORE NORMAN CLAIR, is being sued in his personal capacity as t President of the GENERAL CONFERENCE CORPORATION of Seventh Day Adventist Church, the governing organization of the Seventh Day Adventist Church. Its headquarters is in Silver Spring, Maryland, and oversees the church in directing its various divisions and leadership as well as doctrinal matters. This Defendant failed to train and supervise, the pastors

(MAISSONNEVUE, JEAN CHARLES, and MONTPREMIER) church leaders under his supervision who were involved in the scheme to defraud members of the class.

82.     Defendant, GENENERAL CONFERENCE CORPORATION is a Delaware not for profit corporation who owns and manages the affairs of the Seventh Day Adventist Church. As the corporate entity in charge of the Church, this Defendant has a legal obligation to ensure that church leaders are not involved in fraud especially fraudulent actions as in this case designed to defraud the very people the church leaders were supposed to protect.

## C. THE ADVENTIST CHURCHES IN THE SEVERAL STATES

83.     The "Church"  Defendants in the several states named herein are part of the state conference of the Seventh-day Adventist church. Each church named herein is part of their local conference in the state in which they belong. Each of the church is pastored by a Haitian pastor hired and trained by the GENERAL CONFERENCE CORPORATION.

84.     The pastors of each of these churches used their influence to coerce members of the church to invest in Eminifx. In exchange for that each pastor received compensation from Eddy Alexandre for collecting money from their parishioners supposedly to invest in Eminifx.

85.     Each of the pastors of the churches, used their churches as a vehicle to commit fraud. Specifically, they allowed Defendant EDDY ALEXANDRE to make investment presentation about Eminifx, with the specific knowledge that EDDY ALEXANDRE was involved in a ponzi scheme, and the pastors of each of these churches knew that it was a ponzi scheme not a legitimate investment opportunity.

86.     Most of the parishioners who were defrauded are not sophisticated investors who could discern for themselves whether an investment opportunity is legitimate or not. The pastors were their only source of information, and they trusted their pastors without reservation.

87.     Defendant Eddy Alexandre was invited to each of these churches to make presentation about Eminifx investment. Defendant did attend these churches and made these presentations providing false information to the investors with the consent of the pastors who knew the information provided by Eddy  Alexandre to the parishioners were false and illegal.

### C.  CLASS ALLEGATIONS

88.     For the purposes of all relief sought in this case, the Plaintiffs as representative of the Class of 62,000 investors bring this action pursuant to Rule 23(a), b (2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all other persons similarly situated. Each of these individual class representatives is a person who were coerced to invest thousands of dollars in the Criminal Enterprise under false pretense.  Thus, each is a member of the proposed class.

89.     The Class which plaintiffs seek to represent consists of all class of investors. There are three classes of investors: Those who invested by sending their money directly to Eminifx or EDDY ALEXANDRE, the second subclass is made of people who invested as part of a group in the pyramid who gave their money to a third party, and third subclass is made of people who transferred their money using their crypto account via a third-party crypto platform.

90.     The number of investors who are in at least seven countries around the world and is too numerous for practicable joinder.

91.     There are questions of law and fact common to all members of the class and such questions predominate over any questions solely affecting any individual member of the Class. Class members have been directly affected by actions of the defendants and stand to lose millions of dollars.

92.     The named Plaintiffs will adequately represent the Class and have retained counsel competent and experienced in class action litigation.

93.     A Class action is superior to other available methods for the fair and efficient adjudication of this controversy. There will be no difficulty in the management of this action as a class action.

94.     The conduct engaged in by Defendants, as described above, is a manifestation of Class-wide fraudulent actions employed by the Defendants to defraud investors of millions of dollars. Through these actions, Defendants have violated several Federal statutes, state of Florida statute and failure to train and supervised the defendants church leaders.

95.     Through the actions described above, the Defendants in concert, and on behalf of each other and the criminal enterprise acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard of the laws.

96.     Defendants have also subjected members of the Class to intentional infliction of emotional distress, conversion, negligent hiring, training and supervision, and economic loss. Many of the investors have suffered severe emotional trauma by reasons of Defendants' actions.

97.     As a proximate result of the actions of Defendants, as described above, members of the Class have suffered and continue to suffer irreparable loss and injury, including but not limited

to economic loss, physical and emotional distress, and mental anguish. For these injuries, members of the Class seek compensatory damages.

## FIRST CLAIM FOR RELIEF

## (FEDERAL RICO 18 U.S.C. § 1964 (c)

98.     Plaintiffs incorporate by reference and re-allege paragraphs 1 through 57 as set forth above.

99.     Plaintiffs allege that Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1964(c). Specifically, Congress has defined "racketeering" to include wire fraud, or committing fraud, by means of electronic transmissions over wire. The Defendants here engaged in multiple instances of wire fraud, including thousands of instances where Defendants communicated with Investors via wire, in which they falsely claimed that the investors' fund was invested, and that Eminifx possesses a robot assist trading platform that was guaranteed to earn investors no less than five to nine percent returns each week.

100.    As detailed below, Plaintiffs allege three different causes of action for federal RICO violations.  In summary, Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a) provides relief against parties who use income generated through a pattern of racketeering activity, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these three sections of the statute.

101.    18 U.S.C. § 1964 (c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States

district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee ...."

### *Count 1: Violation of 18 U.S.C. § 1962(c)*

102.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 67 set forth above.

103.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c).

104.    Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

105.    Defendants' activities include several acts of racketeering activity since 2020.Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

106.    One such act took place in May 2021  when EDDY ALEXANDRE together with the named Defendants and in furtherance of the criminal activities, and purpose of the scheme of Eminfix Enterprise, falsely and fraudulently communicated via wires that Eminifx was legitimate crypto exchange platform aided by Defendants' trade secret to wit a robot aided trading platform and that Defendants have invested the Fund of the members of the class and that the Return on Investment (ROI) paid to members of the class was actual profits earned

from actual investment – these falsehoods were communicated via interstate wires to members of the class each week from January 2020 to May 22, 2022.

107.   From 2020 to May 22, 2022, these fraudulent acts took place every Thursday of the week when named Defendants, in furtherance of the activities, purpose and scheme of the Eminifx Enterprise, falsely and fraudulently communicated falsehood about the investment and Eminifix via Zoom Calls using interstate wires.

108.   Other such acts are described further below. All of these acts were continuous over the inception of Eminifx through and including the day that Defendant EDDY ALEXANDRE was arrested by the Federal Bureau of Investigation.

109.   At all times relevant hereto, beginning on or around January of 2020 and continuing through the arrest of EDDY ALEXANDRE each Defendant conducted and participated in the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

110.   On or around August 20, 2021, Defendants formed an association-in-fact described herein as the EminiFX, Inc. the "Criminal Enterprise" within the meaning of 18 U.S.C. § 1961(4).

111.   The Eminifx Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding the class of Plaintiffs  by creating and conducting a scheme to fraudulently receive millions of dollars from members of the class under false pretense between January 2020 and May 2022.

112.   The Eminifx Enterprise is an ongoing organization that functions as a continuing unit. The Eminifix Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity.

113.    All the Defendants agreed to and did conduct and participate in the conduct of the Eminifx Enterprise's affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiffs.

114.    The wire fraud committed by Defendants is based on a scheme developed and carried out by the Eminifx Enterprise wherein named Defendants specifically EDDY ALEXANDRE, JOHN MAISSONEUVE, SOPHIA MAISSONEUVE, WILLIAMS JEAN CHARLES, PHILIPS MONTPREMIER, LYDIE BASTIEN, JANE DOE 1, fraudulently  communicated electronically to members of the class information via emails, wires, and zoom calls by video information that were fraudulent, and false for the purpose of pursuing an illegal means, knowing the information was false, fraudulent and was communicated for the purpose of illegally depraving members of the class of their money.

115.    All members of the Class were deceived by the weekly fraudulent communications surrounding the real purpose of Eminifx, and whether the returns paid was real returns from investment or made-up returns for the purpose of recruiting more investors.

116.    Defendants had a duty to disclose to the members of the class that their money had not been invested and that the returns they were receiving each week were from later investors signed under them in the pyramid style Ponzi scheme.

117.    Defendants' failure to disclose their true intention to Plaintiffs was done intentionally and with full knowledge of all relevant facts.

118.    Defendants' failure to disclose the true facts about the investment, and the fact that there was no robot assist investment, and no trade secret was fraudulent.

119.   Defendants' continued pattern of recruiting more investors knowing that their money would not be invested but rather use to pay earlier investors was fraudulent.

120.   Defendants' failure to inform the members of the class that all monies collected would be held in their personal accounts belonging to Defendant EDDY ALEXANDRE, and other family members of Defendant was fraudulent.

121.   Defendants used the wires for the transmission, delivery, or shipment of the following by the Defendants or third parties, all of which are related to the Eminifx Ponzi Scheme, and they were foreseeably caused to be sent as a result of Defendants' illegal Scheme:

- Wires to the New York Department of Corporation used to fraudulently file papers registering Eminifx as a New York Corporation.
- Wires to transferring funds between accounts in the United States and Europe for the purpose of pursuing the ponzi scheme.
- Wires between Defendants;
- Email and telephone communications between Defendants; and members of the Class.
- Payments between Eminifx, the named Defendants and continuing through and between January 2020 and May 2022.

122.   Defendants used the Internet and other electronic facilities to carry out the Scheme and to conceal their ongoing fraudulent activities.

123.   At all times discussed herein, Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and, used interstate wires to further Defendants' scheme.

124.   The Eminifx Enterprise engaged in and affected interstate commerce by way of said wire fraud.

125.   The wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct.

126.   To achieve their common goals, Defendants knowingly and willfully concealed from the public, and Plaintiffs the unlawfulness of Defendants' conduct, which was committed at the instruction of, and through the directions of the named Defendants: EDDY ALEXANDRE, JOHN MAISSONEUVE, WILLIAMS JEAN CHARLES, PHILIPS MONTPREMIER, SOPHIA MAISSONEUVE, LYDIE BASTIEN, BETRAND LOUIS, PROF GEORFREY.

127.   To achieve their common goals, Defendants knowingly and willfully concealed from the public, and Plaintiffs the unlawfulness of their conduct, which was committed at the instruction of, and through the directions of EDDY ALEXANDRE, JOHN MAISSONEUVE, WILLIAMS JEAN CHARLES, PHILLIPS MONTPREMIER, SOPHIA MAISSONEUVE, LYDIE BASTIEN.

128.   As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs have been injured in their property, causing Plaintiffs to suffer monetary damages in an amount not less than $300,000.00, said damages to be proven at the time of trial.

129.   Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees.

### *Count 2: Violation of 18 U.S.C. § 1962(a)*

130.   Plaintiffs incorporate by reference and re-allege paragraphs 1 through 89 set forth above.

131.    18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

132.    As alleged in paragraph 66, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

133.    As alleged in the preceding section, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

134.    At all times relevant hereto, beginning on or about January 2020 and continuing at least through May 22, 2022  when Defendant EDDY ALEXANDRE  was arrested, all the named Defendants received income derived from a pattern of racketeering activity to use or invest as part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

135.    As alleged in the preceding section, on or around August 22, 2021, Defendants formed the Eminifx Enterprise to effectuate Defendants' pattern of racketeering activity.

136.    All Defendants agreed to and did use income received directly from a pattern of racketeering activity to control, establish, and operate the Eminifx Enterprise, which was engaged in and affected interstate commerce, including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiffs.

137.    The wire fraud committed by Defendants is set forth in the preceding section and is incorporated by reference herein.

138.    As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiffs have been injured in their property, causing Plaintiffs to suffer monetary damages in an amount not less than $300,000,00 said damages to be proven at the time of trial.

139.    Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees.

### *Count 3: Violation of 18 U.S.C. § 1962(d)*

140.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 95 as set forth above.

141.    18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

142.    As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

143.    At all relevant times, beginning in or around January 2020 and continuing at least through May 22, 2022, the Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d).  The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

144.    Defendants have knowingly, willfully, and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud).

145.    Defendants have knowingly, willfully, and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (wire fraud) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

146.    Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

147.    Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

148.    As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs as a class have been injured in their business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $300,000,00 said damages to be proven at the time of trial.

149.    Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Actual Fraud – Florida)

150.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 103 set forth above.

151.    From January 2020 through May 22, 2022, Defendants committed actual fraud under Florida law when they intentionally and falsely represented to the investors of Eminifx that their money was being invested in crypto.

152.    From January 2020 through May 22, 2022 Defendants have intentionally and falsely represented to the investors that they have a robot assist investment platform when they know that was not true.

153.    From August 2021 to May 22, 2022 Defendants EDDY ALEXANDRE, through his corporate representatives Defendant PROF GEORFREY AND BERTRAND LOUIS, intentionally and falsely represented, via video zoom calls that the Plaintiffs investment in Eminifx have earned more than 5% interest weekly and that the company was on solid ground.

154.    From August 20, 2021 through May 22, 2022 Eminifx, through its corporate representative Defendant JOHN MAISSONEUVE, WILLIAMS JEAN CHARLES and PHILIPS MONTPREMIER intentionally and falsely represented, to members of their churches notwithstanding abundant evidence to the contrary, that Eminifx was a legitimate company. Defendant MAISSONEUVE told a group of investors that "It is God first and then Eminifx". Defendant MONTPREMIER said during a radio broadcast that they were two things in his life that he was proud of "Having married my wife and Eminifx."

155.    These false representations are material because they give confidence to class members who had doubts about EminiFX, their business practices and the investment pyramid model of investment.

156.   At all relevant times Defendants had knowledge of the falsity of their representation that EminiFX was a legitimate investment platform with a robot assist investment modality.

157.   At all relevant times Defendants had knowledge of the falsity of their representation that the "return on investment" was earned through actual investment.

158.   At all relevant times Defendants had knowledge of the falsity of their representation that the EminiFx investment Platform was a legitimate investment platform with real returns on investment.

159.   As a direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, Plaintiffs have been injured in their businesses and properties, causing Plaintiffs to suffer monetary damages in an amount not less than $300,000, 00 said damages to be proven at the time of trial.

160.   Because of Defendants' frauds as described herein, Defendants are liable to Plaintiffs for costs and disbursements and reasonable attorneys' fees.

161.   Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, Plaintiffs as a class  is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## THIRD  CLAIM FOR RELIEF

### (Civil Conspiracy to Commit Fraud –Florida)

162.    Plaintiffs incorporate by reference and re-allege paragraphs 1 through 117 as set forth above.

163.    FLA Code § 895.03 makes it unlawful for "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act."

164.    At all relevant times, the Defendants agreed to and did conspire to willfully and maliciously injure Plaintiffs through the fraud committed by them as described below.

165.    Defendants, through the Eminifx Enterprise, have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the Eminifx Enterprise as alleged in the preceding section.

166.    Defendants, and each of them, also conspired to commit the frauds alleged herein, in that all Defendants conspired to accomplish the Ponzi Scheme and had a meeting of the minds to accomplish that goal through one or more unlawful acts of fraud, as alleged herein, and the class of Plaintiff suffered harm as a result of Defendants' conduct and conspiracy.

167.    As a direct and proximate consequence of the Defendants' conspiracy, Plaintiffs have been injured in their businesses and properties, causing Plaintiffs to suffer monetary damages in an amount not less than $300,000, 00 said damages to be proven at the time of trial.

168.    Because of Defendants' violations of FLA Code § 895  Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees and any injunction the court deems reasonable.

169.    Defendants' conduct as alleged in paragraphs 121-129 above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm the Plaintiffs.   Accordingly, the Class is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## FOURTH CLAIM FOR RELIEF

### (Exemplary Punitive Damages)

170.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 125 set forth above.

171.    Defendants' actions alleged above were malicious, willful and wanton, and were made with specific intent to harm Plaintiffs.

172.    Moreover, Defendants' actions violated 18 U.S.C. § 1343 as alleged in Plaintiffs' First Claim for Relief, above.

173.    Moreover, Defendants' actions violated Florida Statutes 895.02 and 895.12, as alleged in Plaintiffs Second Claim for Relief, above.

174.    Moreover, Defendants' actions constitute fraud and conspiracy to commit fraud in the States of Oregon and Virginia as alleged in Plaintiff's Third through Sixth Claims for Relief, above.

175.    In order to deter such conduct in the future, Plaintiff should be awarded exemplary punitive damages in an amount of not less than $50,000,000.

176.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demands a trial by jury of all issues so  triable that are raised herein or which hereinafter may be raised in this action.

### FIFTH  CLAIM FOR RELIEF:

### VIOLATIONS OF THE FLORIDA RICO ACT

**(Section 895.03(1), Florida Statutes)**
**(Use of Proceeds from a Pattern of Racketeering)**

177.    This is a claim for civil relief for violations of Section 895.03(1), Florida Statutes, against Defendants EDDY ALEXANDRE, JOHN MAISONNEUVE, WILLIAMS JEAN CHARLES, SOPHIA MAISSONEUVE, LYDIE BASTIEN, PROF GEORFREY, BERTRAND LOUIS, PHILIPS MONTPREMIER, JANE DOE 1 (hereafter for purposes of Count I the "Count I Defendants").

178.    Plaintiffs re-allege and incorporate by reference herein the allegations contained in paragraphs 1 through 131, above.

179.    At least three of the following incidents occurred, creating a pattern of racketeering:

a.  In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security in EMINIFX as defined by Chapter 517, Florida Statutes, directly or indirectly, ALEXANDRE employed devices, schemes, or artifices to defraud, in violation of Section 517.301(1)(a)(1), Florida Statutes. ALEXANDRE operated the EMINIFX Scheme beginning on or about January 2020 to May 22, 2022.

b.  The EMINIFX Scheme, set forth more fully above in Section was structured so as to give the appearance to potential/existing investors that was positioned to reap

profits from investment in Crypto Currency. Based on these representations, investors invested monies in the EMINFIX Scheme until May 21, 2022.

c.  While operating the EMINIFX Scheme, ALEXANDRE and his non-indicted co-conspirators gave investment advice to existing investors that creates the appearance to EMINIFX investors that their investment has/had value, which it does not. ALEXANDRE's scheme perpetuates the EMINIFX Scheme, leading investors to retain their investments.

d.  In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security of EMINIFX as defined by Chapter 517, directly or indirectly, Defendants obtained money or property by means of untrue statements of a material fact or omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Section 517.301(1)(a)(2), Florida Statutes. Beginning on or about January 2020 to May 22, 2022 ALEXANDRE obtained monies from investors by misrepresenting to investors the extent of EMINIFX's investors' return on investment, operation, that its products worked, the safety of investing in EMINIFX, the timing of returns and payoff dates, that EMINIFX had a religious mission.

e.  Beginning on or about January 2022 until May 22, 2022 ALEXANRE and his non-indicted co-conspirators knowingly and willfully concealed or covered up, by their schemes, a material fact that EMINIFX was a Ponzi Scheme based on a pyramid model requiring prior investors to bring at least three other investors under them, in order to make money in violation of Section 517.301(1)(c), Florida Statutes.

f. ALEXANDRE created false writings and documents and used them to attract investors. He and his co-conspirators made false statements or representations during the execution of the EMINIFX Scheme that concealed the fact that there was no ROBOT assisted investment, there were no investment that could guarantee the five to ten percent return he promised to pay each investor every week.

g. ALEXANDRE and his unindicted co-conspirators obtained money or property by means of untrue statements of a material fact or omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Section 517.301(1)(a)(2), Florida Statutes. Beginning on or about January 2020 up to and include May 22, 2022 ALEXANDRE obtained monies from investors by misrepresenting to investors the extent of its operation, its locations, its business partnerships or relationships, its investors' rates of return, and its intellectual property portfolio.

180. From January 2020 to May 22, 2022, ALEXANDER and his unindicted co-conspirators knowingly and willfully concealed or covered up, by their scheme, a material fact that there were operating a scheme in violation of Section 517.301(1)(c), Florida Statutes.

181. The incidents described above occurred every Thursday of the month between January 2020 and May 2022, during video zoom calls, calls "Investors' meeting). All of these meetings had the same or similar intents (repeatedly encouraging people to invest money or money based on lies, misrepresentations), resulting in members of the class invested millions of dollars based on those intentional misrepresentations.

182. Defendants, with intent to defraud members of the class received proceeds derived, directly or indirectly, from the pattern of racketeering activity, from investors.

183.    Defendants used or invested, directly or indirectly, such proceeds or the proceeds derived from the investment or use thereof, in the establishment and operation of the enterprise in violation of Section 895.03(1), Florida Statutes, including but not limited to creating accounts with financial institutions, paying salaries, creating investor documents, creating business plans, travelling, etc., the further descriptions of which cannot be ascertained by Plaintiffs at the time of filing this Complaint.

184.    The enterprise was an ongoing organization, formal or informal, of EMINIFX and functioned both as a continuing unit and has a common purpose of engaging in a course of conduct: unlawfully soliciting investors, obtaining their monies, and hiding their conduct.

185.    Due to the extensive predicate acts committed by the Defendants together and in concert one of whom EDDY ALEXANDRE have been charged criminally and pled Guilty to One Count of Commodities Fraud in violations Title 7, United States Code, Sections 9(1), and Section 13(a)(5), as well as Title 7 of the Code of Federal Regulations, Sections 180.1 and Title 18, United States Code, Section 2.

186.    All  of the Defendants acting on behalf of EMINIFX and each other in conducting the affairs of the businesses, have engaged in conduct in violation of Section 895.03, Florida Statutes.

187.    As a proximate result of the Defendants' fraudulent actions, the Class suffer damages in the amount of 300 million dollars, for which each of the Defendant, individually or severally liable to class members.

**SIXTH CLAIM FOR RELIEF**

**VIOLATIONS OF THE FLORIDA RICO ACT**
**(Section 895.03(3), Florida Statutes)**
**(Conduct of or Participation in an Enterprise) (ALL Defendants)**

188.     This is a claim for civil relief for violations of Section 895.03(3), Florida Statutes, against all the  Defendants named herein.

189.     Plaintiffs reallege and incorporate by reference herein the allegations contained in paragraphs 1 through 150, above.

190.     The above -named Defendants were employed by and/or associated with Defendants EMINIFX.

191.     The Defendants conducted, participated in, directly or indirectly in such enterprise by engaging in all the incidents described in paragraphs "a " to "g " above, which is hereby incorporated by reference.

192.     Each incident described above had the same or similar intents (repeatedly lying, and misleading   investors for the purpose of getting them to invest in the Ponzi Scheme).  In fact during the plea allocution, Defendant ALEXANDRE admitted of lying and misleading investor for the purpose of taking their money. (See Transcript of Plea Agreement, as Exhibit "B"). All the Defendants worked together as accomplices of each other and developed methods of commission that compensate them for each investor they brought into EMINIFX.

193.     The Criminal Enterprise – Eminifx was an ongoing organization, formal or informal that functioned both as a continuing unit and has a common purpose of engaging in a course of conduct: unlawfully soliciting investors, obtaining their monies, and hiding it, and misusing it.

194.     As a proximate result of the Defendants' illegal acts, members of the class sustained damages for which each Defendant is individually and severally liable to the class.

## SEVENTH CLAIM FOR RELIEF

**VIOLATIONS OF THE FLORIDA RICO ACT**
**(Section 895.03(4), Florida Statutes)**
**(Against all Defendants)**

195.    This is a claim for civil relief for violations of Section 895.03(4), Florida Statutes, against the above Defendants.

196.    Plaintiffs re-allege and incorporate by reference herein the allegations contained in paragraphs 1 through 148, above.

197.    The above Defendants in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, namely, to engage in a pattern of racketeering activity described in paragraph "a" to "g", which is hereby incorporated by reference.

198.    The Defendants knowingly and willfully became members of such conspiracy. At the time they joined the conspiracy, they did so with the specific intent to participate in the affairs of the criminal enterprise with the knowledge and intent that ALEXANDER or his agents would engage in many incidents of racketeering described in paragraph above, as part of a pattern of racketeering activity:

    a. The following Defendants: MAISSONEUVE, MONTPREMIER, BASTIEN, LOUIS, GEORGREY, JEAN CHARLES participated in the affairs of EMINIFX. From January 2020 to about May 22, 2022, the above Defendants invited several investors to weekly investors' meeting. The purpose of the meetings was to discuss the performance of EMINIFX. The Defendants told investors that the company had a robot assist investment, and that the rate of returns was between five to ten percent weekly, and that their money was earning interest daily when the Defendants knew this was not true.

b.   The above Defendants participated in the Fraudulent Scheme, executing documents they knew to be false, including fake reports on return on investment.

199.   As a proximate result of the Defendants' willful participation in the fraudulent scheme, and recruiting investors, members of the class sustained economic damages for which the Defendants are severally and individually liable to the Plaintiffs.

## EIGHT CLAIM  FOR RELIEF

**VIOLATIONS OF THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT (Section 517.301, Florida Statutes)**
**(All Defendants)**

200.   This is an action for multiple violations of the Florida Securities and Investor Protection Act, Section 517.301, Florida Statutes, against ALL NAMED Defendants.

201.   Plaintiffs re-allege and incorporate by reference herein the allegations contained in paragraphs 1 through 163, above.

202.   In connection with the rendering of investment advice or in connection with the offer, sale, or purchase of any investment or security in EMINIFX as defined by Chapter 517, Florida Statutes, directly or indirectly, the above Defendants employed devices, schemes, or artifices to defraud, in violation of Section 517.301(1)(a)(1), Florida Statutes. ALEXANDRE operated the EMINIFX Scheme beginning on or about January 2020 to May 22, 2022, recruiting over Sixty Two Thousands people to invest in EMINIFX based on lies and misrepresentations. EMINIFX was structured to give the appearance to potential/existing investors that EMINIFX was positioned to reap profits from investment in crypto currency.

203.     Based on these representations, investors invested monies in the EMINIFX Scheme from January 2020 to up and until May 22, 2022.  Each Defendant was responsible for recruiting investors from their churches, and the public. Those recruitments were done not only via the weekly investors meeting, but in churches, and other places, where the above defendants continuously lied and misrepresented the rate of return, the functionality of EMINIFX website, and the investment opportunities.

204.     The Defendants discouraged existing investors to withdraw their money, with the promise that within nine months, they will be millionaires based on compounded interest. All the while the Defendants knew that there was no investment, and that the money collected from new investors were being used to pay old investors. These defendants took advantage of the church members who relied on them for spiritual guidance.

205.     In connection with the rendering of investment advice or in connection with the offer, sale, or purchase, or recruitment of any investment or security of EMINIFX as defined by Chapter 517, directly or indirectly, the above Defendants  obtained money or property by means of untrue statements of a material fact or omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Section 517.301(1)(a)(2), Florida Statutes.

206.     Between January 2020 and May 2022 the above Defendants obtained monies for EMINIFX from investors by misrepresenting to investors the extent of EMINIFX 's operation, its robot assist investment, its investment strategy, its rate of return, its investment placement and that EMINIFX had a religious mission supported, promoted by Defendant GENERAL CONFERENCE CORPORATION-7TH DAY ADVENTIST CHURCH through their local appointed pastors.

**NINTH CLAIM FOR RELIEF**

**(Negligent Hiring, Training and Supervision)**
**Against Defendants:  THEODORE NORMAN CLAIR, AKA "TED WILSON" NC**
**and GENERAL CONFERENCE CORPORATION of the  7TH DAY ADVENTIST**
**CHURCH**

207.    Plaintiffs re-allege and incorporate by reference each allegation above as set forth in paragraphs 1-161 herein.

208.    In the hiring and supervising of the Adventist Pastors named herein, the Defendants GENERAL CONFERENCE CORPORATION (GCC)  of the -7TH DAY ADVENTIST  has an affirmative duty to train and supervise all of its pastors and to prevent them from engaging in fraud, misrepresentation, theft and or otherwise unlawful conduct against the parishioners under their leadership, and the general public at large.  Nearly ninety percent of the class members are parishioners of the Adventist Churches listed   in this complaint from the following states: Florida, New York, Texas, Pennsylvania, Massachusetts, New Jersey, Georgia, Connecticut and Rhode Island.

209.    The Pastors were hired by CGC -7th Day Adventist Corporation as spiritual leaders of the  churches in the above-named states. The Pastors used their power, influence, and leadership to fraudulently coerced and forced members of the class to invest in EMINIFX with the knowledge that EMINIFX was a Ponzi scheme with a pyramid model designed to take investors' money for their own personal gains.

210.    Defendant GENERAL CONFERENCE CORPORATION and TED WILSON owe an affirmative duty to Plaintiffs, Defendants breached that duty by failing in the most basic expectation that they train and supervise those pastors to prevent them from engaging in crimes.

211.    Defendants have negligently and/or recklessly failed to satisfy that duty of care in hiring, supervising, training, and retaining of the pastors who serve in their several churches. These pastors have been engaging in fraudulent actions or otherwise illegal conduct that caused damages to members of the class.

212.    The Defendants knew or should have known that their pastors were engaging in fraud against the parishioners and the public at large.

213.    Defendants GENERAL CONFERENCE CORPORATION, and THEODORE NORMAN CLAIR as president of the GCC knew or should have known that the pastors that they hired have been engaging in fraudulent actions directing at their parishioners and enriching themselves in the process while members of the class sustained severe economic damages.

214.    As a result of Defendants' negligent conduct, Plaintiffs and members of the Class have suffered and continue to suffer injuries and damages.

215.    These Defendants are especially liable to all members of the Class because of their negligence.

## TENTH CLAIM FOR RELIEF

Negligent Hiring and Supervision by the Adventist Conference
(Florida, New York, Texas, Massachusetts, Connecticut, New Jersey, Georgia, Rhode Island, Pennsylvania)

216.    Plaintiffs re-allege and incorporate by reference each allegation above as set forth in paragraphs 1-161 herein.

217.    In the hiring and supervising of the Adventist Pastors named herein, the Defendants consist of the State Conference named herein of the -7TH DAY ADVENTIST has an affirmative duty to train and supervise the pastors  they hire and to prevent them from engaging

in fraud, misrepresentation, theft and or otherwise unlawful conduct against the parishioners under their leadership, and the general public at large.  Nearly ninety percent of the class members are parishioners of the Adventist Churches listed in this complaint from the following states: Florida, New York, Texas, Pennsylvania, Massachusetts, New Jersey, Georgia, Connecticut and Rhode Island.

218.    The Pastors were hired by CGC -7th Day Adventist Corporation, and the local conference of the different states  as spiritual leaders of the  churches in the above-named states. The Pastors used their power, influence, and leadership to fraudulently coerced and forced members of the class to invest in EMINIFX with the knowledge that EMINIFX was a Ponzi scheme with a pyramid model designed to take investors' money for their own personal gains.

219.    Defendant, local conference of the Seventh Day Adventist church  owe an affirmative duty to Plaintiffs, Defendants breached that duty by failing in the most basic expectation that they train and supervise those pastors to prevent them from engaging in crimes.

220.    Defendants have negligently and/or recklessly failed to satisfy that duty of care in hiring, supervising, training, and retaining of the pastors who serve in their several churches. These pastors have been engaging in fraudulent actions or otherwise illegal conduct that caused damages to members of the class.

221.    The Defendants knew or should have known that their pastors were engaging in fraud against the parishioners and the public at large.

222.    Defendant, the local conference of the Seventh day Adventist Church knew or should have known that the pastors that they hired have been engaging in fraudulent actions directing

at their parishioners and enriching themselves in the process while members of the class sustained severe economic damages.

223.   As a result of Defendants' negligent conduct, Plaintiffs and members of the Class have suffered and continue to suffer injuries and damages.

224.   These Defendants are especially liable to all members of the Class because of their negligence.

**(Intentional Infliction of Emotional Distress)**
**Against All Defendants**

225.   Plaintiffs re-allege and incorporate by reference each allegation above as set forth herein.

226.   Defendants' actions toward the Plaintiffs and other members of the Class constituted extreme and outrageous conduct and was done intentionally.

227.   Defendants fraudulently coerced members of the class to invest their entire life saving with a false promise of being millionaires in 9 months. Most of the members of class are not rich and are every-day immigrant who works very hard to save a little bit of money. The defendants recklessly with total disregard for their wellbeing took their money for their own personal use.

228.   Defendants' extreme and outrageous conduct subjected the class members to emotional trauma, humiliation, severe emotional distress.

229.   Defendants actions and the ensuing damages to class members were foreseeable. Upon information and believe some class members have committed suicide upon finding out that EMINIFX was a Ponzi Scheme.

230.    As a result of Defendants' intentional actions, the Plaintiffs sustained injuries and damages for which each Defendant is individually and severally liable to Plaintiffs.

## ELEVENTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

231.    Plaintiffs  re-allege and incorporate by reference paragraphs 1-176 as set forth above.

232.    Plaintiffs owe a duty of care to the members of the class, that duty is an affirmative duty to tell the truth with regard to the nature of the investment in the Eminifx.

233.    Defendants working together and in concert breach that affirmative duty by repeatedly lying to the Plaintiffs about the nature of the business, the company, the platform, its functionality, and the return on investment. These lies were material because without them, members of the class would not have invested in EMIINIFX.

234.    Plaintiffs sustained emotional and economic damages because of the Defendants' actions. Those damages were foreseeable, and they are the direct result of Defendants' actions.

235.    Defendants' actions are the proximate cause of Plaintiff's injuries, "but for" Defendants 'actions Plaintiff would not have sustained the damages.

236.    Each named Defendant is individually and severally liable to Plaintiffs for all their damages.

## JURY DEMAND

237.    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable that are raised herein, or which hereinafter may be raised in this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. Finding that all defendants are jointly and severally liable for all damage caused to Plaintiffs;

2. Awarding Plaintiffs monetary damages in an amount not less than $800,000,00 said amount to be proven at trial;

3. Awarding Plaintiff enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c) and FLA 895(7)(a);

4. Awarding Plaintiffs its litigation expenses, including reasonable attorneys' fees, costs, and disbursements.

5. Awarding Plaintiffs punitive damages in the sum of not less than $80,000,000 or an amount otherwise to be decided by a jury; and

6. Granting such other relief as the case may require or as may be deemed proper and equitable.

Miami, Florida
Dated this 24th day of April 2023.

Respectfully submitted,

/s/ Wil Morris.
MORRIS LEGAL, PC
By: /s/ Wil Morris Esquire
Will Morris, OSC #
Email:
Telephone:
Facsimile:
Lead Counsel for Plaintiffs

/s/. Ralph Francois

FRANCOIS & ASSOCIATES, P.C.
By: /s/ Ralph Francois, OSC #
Email:
Telephone:
Facsimile:
Counsel for Plaintiffs